1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    OPVINDER S. RAJPAL,                     Case No.  21-cv-05066-EMC

8                        Plaintiff,

9           v.                               ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANT'S
10   DELTA AIR LINES, INC.,                  MOTION TO DISMISS

11                       Defendant.          Docket No. 9

12

13

14          For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendant

15   Delta Air Lines, Inc.'s ("Delta's") pending motion to dismiss Plaintiff Opvinder S. Rajpal's

16   complaint.  Docket No. 9 ("Mot.").

17                          I.        **BACKGROUND**

18          Plaintiff, an Indiana resident, alleges that two crewmembers manipulated carry-on luggage

19   in an overhead compartment causing a metal water bottle to drop on his head while he was

20   boarding a San Francisco-bound Delta flight at John F. Kennedy (JFK) airport in Queens, New

21   York.  *See* Docket No. 1-1 ("Compl.") ¶¶ 1, 17–19.  Plaintiff was taken to a nearby hospital after

22   the incident.  *Id.* ¶¶ 19–21.

23          On May 21, 2021, Plaintiff filed a complaint in San Francisco County Superior Court[1]

24   raising three California[2] causes of action for (1) negligence, (2) premises liability, and (3) common

25

26   [1] Although Plaintiff never stepped foot in California, Defendant "waived any defense" for lack of
     personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) "by omitting [that defense]
27   from [its] motion."  *See Moser v. Benefytt, Inc.*, --- F.4th ---, 2021 WL 3504041, at *4 (9th Cir.
     2021) (quoting Fed. R. Civ. P. 12(h)(1)(A)).

28   [2] The parties agree that California law applies to this case.  *See* Docket Nos. 26 ("Def.'s Suppl.

United States District Court
Northern District of California

1    carrier liability.  *Id.* ¶¶ 22–34.  Defendant removed the case to this Court based on diversity

2    jurisdiction on June 30, 2021.  *See* Docket No. 1 ("Notice of Removal").  It is undisputed that

3    Delta is an out-of-state Defendant incorporated in Delaware with a principal place of business in

4    Georgia.  Compl. ¶ 2.

5         On July 7, 2021, Defendant filed the pending motion to dismiss the second (premises

6    liability) and third (common carrier liability) causes of action for failure to state a claim pursuant

7    to Federal Rule of Civil Procedure 12(b)(6).  Mot.

8                               **II.        LEGAL STANDARD**

9         Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

10   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

11   complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R.

12   Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's

13   decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550

14   U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the

15   claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th

16   Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the

17   pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &*

18   *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not

19   simply recite the elements of a cause of action [and] must contain sufficient allegations of

20   underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

21   *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

22   990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual

23   content that allows the court to draw the reasonable inference that the Defendant is liable for the

24   misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a

25   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

26   unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

27

28   _____

     Br."); 27 ("Pl.'s Suppl. Br.").

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.   DISCUSSION

A.   Premises Liability

In California, "[t]he proper test to be applied to the liability of the possessor of land is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others." *Rowland v. Christian*, 443 P.2d 561, 568 (Cal. 1968). "The elements of a negligence claim and a premises liability claim are the same:  a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Kesner v. Sup. Ct.*, 384 P.2d 283, 300 (Cal. 2016). The only difference is that "[p]remises liability 'is grounded in the possession of the premises and the attendant right to control and manage the premises;'" such that "mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act." *Id.* at 301 (quoting *Preston v. Goldman*, 720 P.2d 476, 482 (Cal. 1986)).

Defendant argues it is not liable for Plaintiff's injuries under a premises liability theory because "an airplane is not a premises for purposes of premises liability [as] such liability relates to ownership *of land*." *Thompson v. Hawaiian Airlines, Inc.*, No. CV094515CASPLAX, 2010 WL 11515431, at *5 (C.D. Cal. July 19, 2010) (emphasis added); *see also Rowland*, 443 P.2d at 568 ("The proper test to be applied to the liability of the possessor *of land* . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others." (emphasis added)); *Kesner*, 384 P.2d at 301 ("[T]he duty of care encompasses a duty to avoid exposing persons to risks of injury that occur off site if the *landowner's* property." (emphasis added)). Plaintiff does not dispute that premises liability only applies to injuries that arise from the ownership or possession of land. *See* Docket No. 19 ("Opp'n") at 2. Instead, he argues Defendant is liable because "it is undisputed" Defendant was in possession of, and had control over, the airport terminal, gate, and runway area where its airplane was parked at the time of the accident. *Id.* at 3. The problem, however, is that the entirety of the incident here occurred on board the airplane, a mobile vehicle, not land. There was nothing about the airport terminal, gate, or runway that contributed to the accident.

To be sure, "the physical or spatial boundaries of a property [do not] define the scope of a

1    landowners liability;" rather "the duty of care encompasses a duty to avoid exposing persons to

2    risks of injury that occur off site if the landowner's property is maintained in such a manner as to

3    expose persons to an unreasonable risk of injury offsite." *Kesner*, 384 P.2d at 301 (quoting

4    *Barnes v. Black*, 84 Cal. Rptr. 2d 634, 637 (Ct. App. 1999)).  In *Kesner*, for example, the

5    California Supreme Court held a landowner could be held liable for harm caused by asbestos

6    fibers carried on the plaintiff's husband's clothing from the landowner's property to the plaintiff's

7    home.  *Id.*  In *McDaniel v. Sunset Manor Co.*, the Court of Appeal held the owner of an apartment

8    complex could be liable for injuries a toddler suffered from almost drowning in a creek adjacent to

9    the landowner's property because "the most direct route [to the creek] would have been through

10    the fence on the south side of the [property]."  *See* 269 Cal. Rptr. 196, 197 (Ct. App. 1990).

11    Similarly, the *Barnes* Court held the owner of an apartment complex was liable for the death of a

12    child who was struck by a vehicle in a public avenue adjacent to the complex after his tricycle

13    veered off the complex's driveway because the landlord had failed to install a gate.  84 Cal. Rptr.

14    2d at 636.

15        These cases are distinguishable from the instant case, however, because the landowners

16    there "maintained [their properties] in such a manner as to expose persons to an unreasonable risk

17    of injury offsite." *Kesner*, 384 P.2d at 301.  The landowner in *Kesner*, for example, failed to

18    remove the asbestos *from his land*, and the landlords in *McDaniel* and *Barnes* failed to erect

19    fences or other barriers *on their land* to prevent children from stumbling into the neighboring

20    creek and avenue, respectively.  Here, by contrast, there was nothing about the land (*e.g.*, the

21    terminal as distinct from the airplane) which caused the injury.  Indeed, Plaintiff's complaint

22    alleges his injury was caused by the negligence of Defendant's crew members, not from the way

23    Defendant maintained its airplane, terminal, gate, or runway area.  *Cf. Garcia v. Paramount Citrus*

24    *Ass'n, Inc.*, 80 Cal. Rptr. 3d 512, 514 (Ct. App. 2008) (landowner "had no duty to [the plaintiff]

25    arising from the nonpermissive, negligent use of its property by a third party").

26        Accordingly, the Court dismisses Plaintiff's second cause of action for premises liability

27    without leave to amend.

28

B.    Common Carrier Liability

Section 2100 of the California Civil Code establishes a heightened duty of care for common carriers: "[a] carrier of persons for reward must use the *utmost care and diligence* for their safe carriage, must provide *everything necessary* for that purpose, and must exercise to that end a reasonable degree of skill." Cal. Civil Code § 2100 (emphasis added). Under section 2100, common "carriers are responsible for any, *even the slightest*, negligence and are required to do all that human care, vigilance, and foresight reasonably 0can do under all the circumstances." *Acosta v. S. Cal. Rapid Transit Dist.*, 465 P.2d 72, 77 (Cal. 1970). This heightened duty of care is owed only "while the passengers are *in transitu*, and until they have safely departed the carrier's vehicle." *McGettigan v. Bay Area Rapid Transit. Dist.*, 67 Cal. Rptr. 2d 516, 520 (Ct. App. 1997) (quoting *Marshall v. United Airlines*, 110 Cal. Rptr. 416, 418 (Ct. App. 1973)). In other words, common carriers must exercise "utmost care and diligence" toward passengers within "the sphere of any activity of the carrier which might reasonably constitute a mobile or animated hazard to the passenger," such as "moving vehicles and the jet and propeller air blasts of an airline's landing area[.]" *Marshall*, 110 Cal. Rptr. at 419. Outside of that "sphere of activity," a carrier owes its passengers only "ordinary or reasonable care." *Id.*; *see also McGettigan*, 67 Cal. Rptr. 2d at 521 ("[T]here are no mobile hazards on a train platform similar to those of an airline landing area. . . . Accordingly, we conclude that appellant was not within a 'sphere of activity' as envisioned by the *Marshall* court.").

Defendant argues that it did not owe Plaintiff a heightened duty of care as a common carrier because section 2100 is preempted by the Federal Arbitration Act of 1958 (FAA). 49 U.S.C. §§ 40101–50105. The FAA provides a general administrative enforcement scheme whereby "[a] person may file a complaint in writing with the Secretary of Transportation . . . about a person violating th[e FAA] or a requirement prescribed under th[e FAA]." 49 U.S.C. § 46101(a)(1). After an investigation,[3] notice, and an opportunity for a hearing, the Secretary can "issue an order to compel compliance with th[e FAA] if the Secretary . . . finds . . . that a person is

---

[3] The Secretary is only required to investigate "if a reasonable ground appears . . . for the investigation." 49 U.S.C. § 46101(a)(1)–(2)

violating th[e FAA]" and its implementing regulations.  *Id.* §§ 46101(a)(2)–(4).  The U.S.

Department of Transportation (DOT) may also obtain "a civil penalty of not more than $25,000

for violating" the FAA.  *Id.* § 46301.  Pursuant to certain procedural requirements, any person

"disclosing a substantial interest in an order issued by the Secretary" may appeal that order to a

United States court of appeals.  *Id.* § 46110.  Importantly, the FAA cautions that these remedies

are not exclusive: "[a] remedy under th[e FAA] is *in addition to* any other remedies provided by

law," which is why air carriers are required to maintain liability insurance to pay for tort damages

"resulting from the operation or maintenance of the aircraft."  *Id.* §§ 40120(c) (emphasis added),

41112.

Congress has the power under the Supremacy Clause to preempt state law in three ways.

U.S. Const. art. VI, cl. 2.  First, "Congress may withdraw specified powers from the States by

enacting a statute containing an express preemption provision."  *Arizona v. United States*, 567

U.S. 387, 399 (2012).  Second, "[s]tates are precluded from regulating conduct in a field that

Congress, acting within its proper authority, has determined must be regulated by its exclusive

governance."  *Id.*  Finally, "state laws are preempted when they conflict with federal law."  *Id.*

These three forms of preemption are known as, respectively, express, field, and conflict

preemption.  Here, the Court needs to address only field preemption because Defendant is not

arguing Plaintiff's section 2100 claim is barred by express or conflict preemption.  *See* Mot. at 8.

The Ninth Circuit "divi[des] the FAA's field preemptive effect into two components: state

standards of care, which may be field-preempted by pervasive regulations, and state remedies,

which may survive even if the standard of care is so preempted."  *Gilstrap v. United Air Lines*,

709 F.3d 995, 1006 (9th Cir. 2013) (citing *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363 (3d Cir.

1999)).  In other words, "the scope of field preemption" under the FAA "extends only to the

standard of care," such that "[l]ocal law still govern[s] the other elements (breach, causation, and

damages), as well as the choice and availability of remedies."  *Id.* (quoting *Elassaad v.

Independence Air, Inc.*, 613 F.3d 119 (3d Cir. 2010)).

To apply the *Gilstrap* framework, this Court must "first ask whether the particular area of

aviation commerce and safety implicated by the lawsuit is governed by 'pervasive [federal]

regulations.'  If so, then any applicable state standard of care is preempted." *Id.* (quoting *Martin*

*ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 808 (9th Cir. 2009)).  If the

defendant did "all [that] is required under the [FAA] and its implementing regulations, then [it]

cannot be held liable under state law for failing to do anything further." *Id.* at 1007.  But "if [the

defendant] fell short of compliance with the [FAA] and its implementing regulations, then whether

[a plaintiff] may recover for any injuries . . . caused by [the defendant's] breach will depend [on

whether] California tort law recognizes the FAA standard of care as applicable in negligence and

common carrier claims." *Id.*  Put simply, FAA regulations act as a ceiling to the applicable duty

of care under state tort law.

Here, section 2100's "utmost care and diligence" standard is not preempted by the FAA

because "the area of aviation commerce and safety at issue in this case" is far from "pervasively

regulated." *Id.*  Plaintiff's complaint involves two "areas" of aviation safety: (1) how

crewmembers should store carry-on luggage in overhead compartments, and (2) how air carriers

should train and supervise crewmembers on how to do so.  *See* Compl. ¶ 32.  The regulations

Defendant cites only state that "each passenger must comply with instructions by crewmembers

regarding" what carry-on luggage is allowed aboard an aircraft and how to store it.  14 C.F.R. §

121.589(b).  They also state that "entry doors of an airplane [cannot] be closed in preparation for

taxi or pushback unless at least one required crewmember has verified that each article of baggage

is stowed" in accordance with FAA regulations.  *See Id.* § 121.589 (e).  These regulations do not

indicate that crewmembers should store carry-on luggage themselves, let alone specify what

standard of care they should use while doing so.  Moreover, although FAA regulations have entire

subparts devoted to "airman and crewmember requirements," "training program," and

"crewmember qualifications," none of them discuss how air carriers should train their

crewmembers on how to store carry-on luggage in overhead compartments.  *Id.* §§ 121.381–

121.459.

The panel in *Gilstrap* separately applied the "pervasively regulated" framework to each of

the "areas" or "activities" that formed the factual basis for the plaintiff's tort claims.  709 F.3d at

1007–08.  On the one hand, the plaintiff's negligence and common carrier claims based on

1   allegations that United agents were "repeatedly hostile to her throughout her travels" were not

2   preempted because FAA regulations—like here—"say nothing about *how* airline agents should

3   interact with passengers."  *Id.* at 1008.  By contrast, the claims based on "United's failure to

4   provide her with assistance at all in traversing the air terminal before, between, and after flights"

5   were preempted because "[t]he FAA and its implementing regulations establish the standard of

6   care—or duty—that United owed [the plaintiff] regarding that activity":

> The regulations spell out in detail that air carriers must provide
> assistance when a passenger with a disability requests it for moving
> "between gates to make a connection to another flight," 14 C.F.R. §
> 382.91(a); "moving from the terminal entrance (or a vehicle drop-
> off point adjacent to the entrance) through the airport to the gate for
> a departing flight, or from the gate to the terminal entrance (or a
> vehicle pick-up point adjacent to the entrance after arriving flight),"
> including "accessing key functional areas of the terminal, such as
> ticket counters and baggage claim," *id.* § 382.91(b); and for
> "enplaning and deplaning," *id.* § 382.95(a).  "This assistance must
> include, as needed, the services of personnel and the use of ground
> wheelchairs, accessible motorized carts, boarding wheelchairs,
> and/or on-board wheelchairs . . . , and ramps or mechanical lifts."
> *Id.*

*Id.* at 1007.  In *Summers v. Delta Airlines, Inc.*, Judge Koh likewise concluded the plaintiff's tort

claims based on crewmembers' failure to assist her with boarding and deplaning were preempted

because the FAA "provides comprehensive regulations regarding carriers' obligations to provide

boarding and deplaning assistance" and "regarding the training carriers must provide for personnel

involved in providing boarding and deplaning assistance."  805 F. Supp. 2d 874, 883 (N.D. Cal.

2011) (citing 14 C.F.R. §§ 382.141, 382.143, 382.145).

        Based on these precedents, the Court concludes Plaintiff's section 2100 common carrier

liability claim is not preempted by the FAA because the federal government has not issued

regulations governing how crewmembers must store carry-on luggage in overhead compartments

and how airlines should train crewmembers on how to do so.

///

///

///

///

United States District Court
Northern District of California

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Defendant's motion to dismiss as to Plaintiff's premises liability claim, without leave to amend.  The Court also **DENIES in part** Defendant's motion to dismiss as to Plaintiff's section 2100 common carrier claim.

This order disposes of Docket No. 9.


**IT IS SO ORDERED**.


Dated: September 13, 2021

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

9